ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MAURICIO COMACHO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 304-022 |
| | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Mauricio Comacho, an inmate currently incarcerated at the Federal Correctional Institution in Oakdale, Louisiana, ostensibly brings the above captioned case pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1393, the Federal Claims Tort Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, 42 U.S.C. §§ 1983, 1985, and 1986, and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). (Doc. no. 1, Compl., p. 2). Although he is proceeding *pro se*, Plaintiff has paid the $150.00 filing fee. The matter is now before the Court on the motion for summary judgment filed by Defendants O'Neill, Moore, and the Federal Bureau of Prisons (collectively, the "Federal Defendants").[1] (Doc.

---

[1] Defendants originally filed a motion to dismiss. (Doc. no. 14). However, because Defendants asked the Court to consider matters outside of the pleadings that would not be excluded by the Court, the motion to dismiss was converted to a motion for summary judgment. (Doc. no. 16). The Clerk then gave Plaintiff notice of Defendants' motion for summary judgment, apprised him of his right to file affidavits or other materials in opposition, and informed him of the consequences of default. (Doc. no. 17). The Court's Order converting the motion to dismiss also informed Plaintiff of the consequences of



no. 14). Plaintiff opposes the motion. (Doc. nos. 18-20). For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, that Plaintiff's claims against the Federal Defendants be **DISMISSED** without prejudice, and that an appropriate judgment of dismissal be **ENTERED** as to the Federal Defendants.

## I. FACTS

Plaintiff's complaint raises a host of claims against nine different defendants for acts that allegedly occurred at two different penal institutions, the Federal Satellite Low (FSL) Jesup and the McRae Correctional Facility ("MCF") in McRae, Georgia.[2] However, the instant motion for summary judgment deals only with the allegations concerning Plaintiff's treatment at Jesup.

Plaintiff identifies himself as a Hindu inmate and asserts that his First Amendment rights to practice his religion, as well his rights under the Religious Freedom Restoration Act, were violated when Defendant O'Neill, the Chief Chaplain at Jesup, denied his request in March 2003 for a religious program staffed by volunteers from New York and Tennessee.

---

summary judgment. (Doc. no. 16, pp. 2-4). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.

[2]In his opposition to the motion for summary judgment, Plaintiff makes much of the fact that some of the Federal Defendants refer to events having occurred at the Federal Correctional Institution at Jesup rather than the FSL at Jesup. (Doc. no. 19, pp. 6-7). As the Federal Defendants are clearly describing their interactions with Plaintiff while he was at Jesup, and as Plaintiff himself referred to the Federal Correctional Institution located at Jesup as "FCI/FSL Jesup" in his complaint (doc. no. 1, p. 3), the Court fails to see the significance of the exact name used to the resolution of the motion for summary judgment. Therefore, throughout this Report and Recommendation, the Court will simply refer to the events in question as having occurred at Jesup.

2

(Doc. no. 1, pp. 6-7). Moreover, Plaintiff asserts in conclusory fashion that Defendant O'Neill conspired to have Plaintiff transferred in retaliation for attempting to file a "Request for Administrative Remedy" (BP-9) concerning the denial of the request for a Hindu religious program.[3] (Id. at 8). According to Plaintiff, Defendant Moore, a counselor at Jesup, deliberately failed to file the BP-9 that Plaintiff presented, in violation of Bureau of Prison (BOP) policies, resulting in the formation of a conspiracy with Defendant O'Neill to prevent an investigation of Plaintiff's allegations of religious discrimination.[4] (Id. at 9). Although Plaintiff has submitted a sworn declaration stating that he gave Defendant Moore a BP-9 on March 19, 2003 regarding the religious program, (doc. no. 20, p. 2), Defendant Moore does not recall receiving the BP-9 that Plaintiff alleges he gave to him. (Doc. no. 15, Ex. 10). Moreover, Defendant O'Neill denies knowing, in March 2003 or now, who Defendant Moore is. (Id. at Ex. 9).

Plaintiff claims that shortly after the attempt to file a BP-9 at Jesup, he was a victim of retaliation because on March 28, 2003, he was transferred from Jesup to MCF and was removed from the special diet he had been on at Jesup. (Doc. no. 1, p. 9). Plaintiff eventually made it to MCF, by way of Tallahassee and Atlanta, on May 22, 2003. (Doc. no. 15, Ex. 1, p. 1). Plaintiff maintains that Defendant O'Neill caused him to be transferred and

---

[3] BOP records do not show that Plaintiff ever filed a BP-9 at Jesup that addressed the issues raised in this lawsuit. (Doc. no. 15, Ex. 8, pp. 19-21).

[4] On the same day he allegedly filed his BP-9 with Defendant Moore, Plaintiff submitted a copy of a BP-9 to Ms. C. Wasil, the Administrative Remedies Coordinator at Jesup. (Doc. no. 15, Ex. 7A). On March 25, 2003, Ms. Wasil informed Plaintiff that she had not received Plaintiff's BP-9 and that he should pursue the matter with his counselor (Defendant Moore). (Id. at 1).

3

to be removed from the special diet, but Defendant O'Neill denies doing so. (Id. at Ex. 9). Defendant Moore also denies that he was the cause of Plaintiff's transfer. (Id. at Ex. 10).

Plaintiff maintains that his attempts to utilize the administrative remedy process were thwarted by his transfer from Jesup just days after he first attempted to file a BP-9 regarding the denial of a Hindu religious program. (Doc. no. 20, p. 3). Approximately twenty-one (21) days after his May 22nd arrival at MCF, Plaintiff chose not to file a BP-9 grievance at the institutional level and instead moved directly to a Regional Appeal (BP-10) that was received at the Regional Counsel's Office on June 17, 2003. (Doc. no. 15, Ex. 7, p. 1). This Regional Appeal addressed three separate issues: Religious Discrimination, Failure to Follow P.S. 1330.11, and Retaliation for Filing An Administrative Remedy; in a rejection notice dated June 18, 2003, Plaintiff was informed that each issue must be submitted separately and that he must first file a BP-9 at the institutional level before filing an appeal. (Id. at 1-3). Upon receipt of the June 18th rejection notice, Plaintiff wrote an Inmate Request to Staff in which he requested more BP-10 appeal forms and stated his belief that a BP-9 would not be helpful. (Id. at 4). That request for BP-10 forms was denied, but the response also contained another specific direction that Plaintiff must first file a BP-9 before submitting a BP-10 and an instruction to discuss proper grievance procedures with his unit team. (Id. at 5).

Yet, on July 9, 2003, Plaintiff again submitted a BP-10 appeal (without having first filed a grievance at MCF) in which he argued that Defendant Moore did not properly process his BP-9 at Jesup regarding religious discrimination and that therefore his Regional Appeal should proceed. (Id. at 6). In a rejection notice dated July 14, 2003, Plaintiff was again informed that he must first submit a grievance at the institutional level and that he may not

4

raise two issues in the same appeal; he was specifically told that he "may file a remedy at the institution level."[5] (Id. at 7). Undeterred, on July 23, 2003, Plaintiff submitted, for a third time, a BP-10 appeal in which he argued that he had satisfied the requirement for first filing at the institutional level when he allegedly unsuccessfully submitted a BP-9 to Defendant Moore at Jesup. (Id. at 8-9). This time, the Regional Appeal was rejected as untimely, and Plaintiff was reminded that he had been advised to first file at the institutional level. (Id. at 10).

On August 13, 2003, approximately two and a half months after his arrival at MCF and after the rejection of three Regional Appeals, Plaintiff first attempted to file a grievance at MCF about what happened to him at Jesup in March 2003. (Id. at 13-14). His grievance was denied because the events about which he complained had occurred in March 2003 at another institution, and he was issued a BP-10 appeal form. (Id. at 15-17). Plaintiff dated his appeal August 28, 2003, and on September 17, 2003, the appeal was denied as untimely because requests for administrative remedies "must be received within 20 days of the events complained about." (Id. at 18-19). On October 17, 2003, Plaintiff filed a Central Office Appeal concerning the rejection of his Regional Appeal, but on November 3, 2003, the Central Office rejected the appeal because Plaintiff "had more than enough time to file [his] complaint once [he] arrived at McRae." (Id. at 20). Notably, once Plaintiff decided that he would, as he had been repeatedly instructed to do, file a grievance at MCF, he offered no explanation or rationale for why he had waited so long once he arrived at MCF to file his

---

[5]Because Plaintiff was at MCF, this instruction meant that Plaintiff must file a grievance at MCF.

grievance; nor did he request that the time limits for filing be waived in his case.[6] (Id. at 13, 18). Plaintiff contends that the BOP was negligent and is liable for violating his constitutional rights because by refusing to review his grievances on procedural grounds, they refused to address the misconduct of Defendants O'Neill and Moore, thereby allowing them to violate BOP policies. (Doc. no. 1, p. 10).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on

---

[6]Only after receiving unfavorable responses at the institutional and regional levels did Plaintiff attempt to explain why he should be considered to have timely commenced the grievance procedure. (Doc. no. 15, Ex. 7, p. 22). His failure to include these explanations at the lower levels of processing deprived prison officials and officials in the regional office of the opportunity to consider such arguments.

[7]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

7

## B. Failure to Exhaust Administrative Remedies

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." In the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998); see also Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998) (finding that a prisoner lawsuit in which the denial of a grievance was not appealed must be dismissed under § 1997e).

Furthermore, the Eleventh Circuit Court of Appeals has held that as a result of the Prison Litigation Reform Act, ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), § 1997e requires that all claims be submitted to the prison grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). The Court no longer has discretion to waive the exhaustion requirement.[8] Id. at 1325. Indeed, the Supreme Court has clarified "that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison

---

[8]Suits regarding "prison conditions" include claims "with respect to the conditions of confinement or the effects of action by government officials on the lives of persons confined in prison." Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000)(*per curiam*). Accordingly, Plaintiff's claims regarding the refusal to provide a requested religious program, as well as his claims regarding the handling of his grievances/appeals and dietary restrictions, are subject to the administrative exhaustion requirements.

8

circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, satisfying the exhaustion requirement includes pursuing the issue of filing an out-of-time grievance. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*).

Furthermore, "[t]he Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, a federal prisoner must:

> pursue the specific four-step procedure established by the Bureau of Prisons. 28 C.F.R. § 542.10 (2001); see Funches v. Reish, 97 Civ. 7611, 1998 WL 695904, at *2 (S.D.N.Y. Oct. 5, 1998) (Sand, J.) (detailing four-step procedure: (1) inmate must first seek informal resolution of complaint; (2) if no resolution achieved, prisoner may submit written request for relief on designated form to warden; (3) if request denied, inmate has twenty days to file appeal with Bureau of Prisons Regional Director; (4) upon adverse determination by Regional Director, inmate has thirty days to appeal to Bureau of Prisons General Counsel). . . . . Tort claims, however, are not subject to the same four-part administrative procedure that must be exhausted to pursue other claims. See 28 C.F.R. §§ 542.10, 542.12, 543.30 (2001). A prisoner need only file an administrative tort claim with the Bureau of Prisons Regional Office. See 28 C.F.R. § 543.31(c) (2001). Denial of that claim constitutes the final administrative action. See 28 C.F.R. § 543.32(6) (2001).

Hylton v. Federal Bureau of Prisons, No. CV 00-5747(RR), 2002 WL 720605, at * 1-2 (E.D.N.Y. Mar. 11, 2002).

In addition, there is a specific time line which must be followed during the administrative process. The deadline for completing informal resolution and submission of the BP-9 at the institutional level is twenty (20) calendar days following the date on which the events forming the basis of the request for administrative relief occurred. 28 C.F.R. §

9

542.14(a). However, an extension of time may be granted upon a prisoner's showing of a valid reason for delay, including "an extended period in transit. . . ." Id. § 542.14(b).

Here, Plaintiff maintains that his efforts at filing his BP-9 were undermined by his transfer from Jesup to MCF. However, even if the Court were to accept everything Plaintiff says as true about Defendant Moore's alleged failure to process the BP-9 at Jesup and his efforts to secure administrative remedy forms during his transit from Jesup to MCF (doc. no. 20, p. 3), that still does not excuse his failure to properly utilize the administrative remedies procedure once he arrived at MCF on May 22, 2003. The first form that Plaintiff has shown he filed at MCF concerning the events occurring at Jesup in March 2003 is a BP-10 appeal that he dated June 12, 2003 and that was not received at the Regional Office until June 17, 2003. Thus, giving Plaintiff every benefit of the doubt and excluding all of his transit time from March 28th until May 22nd, Plaintiff did not even attempt to invoke the administrative process until at least twenty-one (21) days after he arrived at MCF.[9] When he did invoke the administrative process, he submitted his paperwork to the wrong level and in the wrong form.[10]

---

[9] The calculation goes to twenty-six (26) days based on when the form was received at the Regional Office.

[10] Because MCF is a private correctional facility operated by Corrections Corporation of America, Inc., its administrative remedies program varies somewhat from the BOP's Administrative Remedy Program. (Doc. no. 15, Ex. 13, p. 1). However, like the BOP process, the administrative remedy program at MCF starts with raising the issue at the institutional level. (Id.). Moreover, inmates at MCF were apprised of the grievance procedure. (Id.). Finally, as evidenced by Plaintiff's eventual, belated efforts to start the administrative remedy process at MCF, the BOP forms used in the Administrative Remedy Program were available to inmates at MCF.

Yet even when he was informed how to proceed (file at institutional level and include only one issue per form), (doc. no. 15, Ex. 7, pp. 3, 5, 7), Plaintiff stubbornly refused to follow the procedural filing rules. Instead, he resubmitted appeals without first filing at the institutional level, and he included more than one issue per form. (Id. at 6-10). Even when Plaintiff was again specifically given permission to file at the institutional level, (id. at 7), he failed to do so. Not until August 13, 2003, did Plaintiff submit a grievance at the institutional level concerning his alleged religious discrimination at Jesup. By that time, it was too late -- almost five months had passed since his request for a Hindu religious program at Jesup had been denied.

Plaintiff maintains that he repeatedly explained that he had attempted to file a BP-9 at Jesup, and therefore, he should have been permitted to file a Regional Appeal without first receiving a decision on his allegations at the institutional level. However, Plaintiff was explicitly and repeatedly told that his failed attempt at filing a BP-9 at Jesup had not satisfied his responsibilities for following the administrative remedy sequence and that he must file a BP-9 at the institutional level prior to filing a BP-10 appeal. His explanation about why he did not file a BP-9 at Jesup or while he was in transit to MCF does not explain why he did not timely file at the institutional level once he arrived at MCF. Rather, he persisted in ignoring the instructions from the Regional Appeal office about how to proceed. When Plaintiff finally decided to file a grievance at MCF, he neither explained why it took him so long to file a BP-9 form once he arrived at MCF on May 22, 2003, nor requested that the normal time limits for commencing the administrative remedy process be waived.

11

It is also noteworthy that even Plaintiff's belated and procedurally improper attempts to pursue administrative remedies only pertained to the alleged religious discrimination he maintains he endured when Defendant O'Neill would not authorize the Hindu religious program that Plaintiff wanted. There is nothing to suggest that Plaintiff's allegations concerning retaliation (transfer and change in diet) and failure to follow proper policy in processing administrative paperwork ever proceeded past one procedurally improper BP-10 appeal, let alone that they were ever exhausted in the administrative process.[11]

Plaintiff's refusal to follow the proper procedure for utilizing the administrative remedy process, *i.e.*, failing to timely file a remedy request at the institutional level upon his arrival at MCF or otherwise request that the time limit for filing once he arrived at MCF be waived, should not be rewarded with a ruling on the merits in federal court. Accord Harper, 179 F.3d at 1312 ( "If we were to accept appellant's position--that the filing of an untimely grievance exhausts an inmate's administrative remedies--inmates, such as appellant, could ignore the PLRA's exhaustion requirement and still gain access to federal court merely by filing an untimely grievance."); see also Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[U]nless the prisoner completes the administrative process by following the rules . . . established for that process, exhaustion has not occurred."); Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997) ("[I]t would be contrary to Congress's intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file

---

[11]Plaintiff's first ill-fated attempt at filing a Regional Appeal prior to obtaining review at the institutional level improperly attempted to raise the religious discrimination, failure to follow BOP policy, and retaliation in one document. (Doc. no. 15, Ex. 7, pp. 1-2 ). As discussed at pages 4 and 11, *supra*, that appeal was rejected for several reasons, one of which was the improper inclusion of more than one issue in the appeal. (Id. at 3).

administrative complaints and then claiming that administrative remedies are time-barred and thus not then available."). Moreover, Plaintiff's arguments that the administrative process is ineffectual does not change this conclusion. As the Eleventh Circuit Court of Appeals has made clear, "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA." Alexander, 159 F.3d at 1325; see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) ("In deciding if [the prisoner plaintiff] exhausted his administrative remedies, we do not review the effectiveness of those remedies, but rather whether remedies were available and exhausted.").

In sum, Plaintiff has not refuted the Federal Defendants' evidence that he failed to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff made the choice not to follow the procedural rules for using the administrative remedy process and is therefore barred from proceeding with his claims at this time. Stated another way, because Plaintiff has not completed the requisite steps necessary to bring his claims against the Federal Defendants in federal court, his claims are not properly before this Court.[12] 42 U.S.C. § 1997e(a) requires that a prisoner exhaust administrative remedies before filing a lawsuit. Higginbottom v. Carter, 223 F.3d at 1259, 1261 (11th Cir. 2000) (*per curiam*) (exhausting administrative remedies is "precondition to filing an action in federal court"); Miller, 196

---

[12]The Court also notes that Plaintiff has improperly attempted to invoke the Court's jurisdiction under 42 U.S.C. § 1983 for his claims against these Federal Defendants. (Doc. no. 1, p. 9, 10). Section 1983 applies only when there is an allegation of a violation of a federal or constitutional right while acting under color of state law; § 1983 does not apply to actions taken under color of federal law. Albajon v. Gugliotta, 72 F. Supp.2d 1362, 1369-70 (S.D. Fla. 1999). Here, there has been no explanation how these Federal Defendants were acting under color of state law.

13

F.3d at 1192-93 (same). Thus, pursuant to 42 U.S.C. § 1997e(a), the Federal Defendants are entitled to summary judgment.[13]

Nevertheless, the Court is reluctant, despite the request of the Federal Defendants, to dismiss Plaintiff's claims with prejudice. The Court recognizes that Plaintiff is proceeding *pro se*, and courts have voiced a dislike for the harshness of dismissing a *pro se* case with prejudice prior to an adjudication on the merits. See Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993); see also Brown v. Hobbs, No. 03-14966, slip op. at 3 (11th Cir.

---

[13]Although it is not entirely clear exactly which claims in the Complaint are brought pursuant to the FTCA, it is clear that the FTCA establishes an exclusive remedy against the United States for certain tortious acts. 28 U.S.C. § 2679(b)(1). Therefore, in a case such as the one at bar with FTCA claims brought for "injury or loss of property, or personal injury or death arising or resulting from the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," id., the only proper defendant is the United States; for these types of claims, neither a federal agency nor individual federal employees who are acting within the lawful scope of their employment are proper defendants. See 28 U.S.C. §§ 1346(b)(1), 2679(a) & (b)(1)-(2). Plaintiff has not alleged that Defendants O'Neill and Moore were not acting within their lawful authority when making decision about scheduling religious programs or handling grievances. Rather, it appears that he is attempting to proceed under the FTCA based on claims of negligence. Thus, Plaintiff's remedy, if any, is against the United States, not its agencies or its employees. See Albajon, 72 F. Supp.2d at 1366 n.7 (noting that federal agencies may not be sued *eo nomine* in tort); Johnson v. United States, 816 F. Supp. 1519, 1522 (N.D. Ala. 1993) (recognizing that United States is only proper defendant in FTCA case). However, Plaintiff has not named the United States as a Defendant in this case.

The Court recognizes that to the extent Plaintiff has attempted to bring claims against the Federal Defendants for constitutional violations or for violations of other statutes which may authorize actions against individuals, this FTCA analysis may not preclude his claims. See 28 U.S.C. § 2679(b)(2). However, as discussed in detail herein, Plaintiff's failure to exhaust his administrative remedies does preclude his claims against the Federal Defendants. As one final note on the FTCA claims, the only indication Plaintiff attempted to satisfy the administrative remedy requirements for these types of claims is an administrative claim filed about events occurring at MCF, not at Jesup. (Doc. no. 1, App. C). Thus, even if Plaintiff were to argue that the administrative remedies available for FTCA claims do not involve the multi-step process described above concerning prison conditions, he has not shown that he filed the necessary administrative claim for any FTCA claims he may be attempting to bring regarding events at Jesup.

14

Mar. 11, 2004) (affirming grant of summary judgment and dismissal of prisoner claims without prejudice based on failure to exhaust administrative remedies). Thus, although the Court is recommending that the Federal Defendants' summary judgment motion be granted, the Court will not recommend that the adjudication be with prejudice to Plaintiff attempting to satisfy the administrative exhaustion requirements so that he may, if he chooses, attempt to re-file his claims against the Federal Defendants at some point in the future.

### III. CONCLUSION

Based on the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, that Plaintiff's claims against the Federal Defendants be **DISMISSED** without prejudice, and that an appropriate judgment of dismissal be **ENTERED** as to the Federal Defendants.

SO REPORTED and RECOMMENDED this 18th day of November, 2004, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

Mauricio Comacho,  )

vs  )  CASE NUMBER CV304-022

CCA, et al.,  )  DIVISION DUBLIN

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated November 18, 2004, which is part of the official record of this case.

Date of Mailing: November 18, 2004

Date of Certificate  ☒ same date, or _____

Scott L. Poff, Clerk

By: C Reynolds
Deputy Clerk

<u>Name and Address</u>

Mauricio Comacho FCI Oakdale REG#42746-004 P O Box 5050 Oakdale LA 71463
Stephen E. Curry, Esq.
Delora L. Kennebrew, Esq.

☒ Copy placed in Minutes
☐ Copy given to Judge
☒ Copy given to Magistrate